Jeffrey MAY, individually; Jean Ross, as natural parent of Damon Ross, an infant, and Jean Ross, individually; Bonnie Schorske, as natural parent of Mark Tulloss, an infant, and Bonnie Schorske, individually; Brenda Butler, as natural parent of Cary Butler, an infant, and Brenda Butler, individually; Gary Drew, individually, Plaintiffs,

v.

Dr. Saul COOPERMAN, Commissioner of the Department of Education; New Jersey Department of Education; Edison Township Board of Education; Old Bridge Township Board of Education, Defendants,

and

Alan J. Karcher as Speaker of the New Jersey General Assembly; the New Jersey General Assembly; Carmen A. Orechio as President of the New Jersey Senate and the New Jersey Senate, Defendants-Intervenors.

Civ. A. No. 83–89.

United States District Court,
D. New Jersey.

Jan. 25, 1984.

Pellettieri, Rabstein & Altman by Anne P. McHugh, Trenton, N.J., for plaintiffs.

Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney by William W. Robertson, Newark, N.J., for Alan J. Karcher and Carmen A. Orechio.

Marinari & Farkas, P.A. by Robert A. Farkas, Trenton, N.J., for New Jersey General Assembly and New Jersey Senate.

Irwin I. Kimmelman, Atty. Gen. of New Jersey by Jaynee LaVecchia, Deputy Atty. Gen., Trenton, N.J., for Dr. Saul Cooperman, Com'r of Educ. and Dept. of Educ.

## OPINION

DEBEVOISE, District Judge.

On January 10, 1983, plaintiffs commenced this action challenging the constitutionality of P.L.1982, Ch. 205, the New Jersey Minute of Silence statute. The complaint sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202. It also requested attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

In an opinion, 572 F.Supp. 1561, filed October 24, 1983 I found the statute unconstitutional and enjoined its enforcement. The case is now before the court on plaintiffs' motion for reconsideration of my denial of a fee award and on defendant-intervenors' motion for an extension of time to file notice of appeal.

The original defendants named in the suit were Dr. Saul Cooperman, Commissioner of the Department of Education; the New Jersey Department of Education; the Edison Township Board of Education; and the Old Bridge Township Board of Education.

Defendants Edison Township and Old Bridge Township Boards of Education ("the local board defendants") implemented P.L.1982, Ch. 205 in all public schools within their jurisdiction. Plaintiff Gary Drew opposed the use of a minute of silence in the Old Bridge Township schools, where his two daughters were enrolled. Plaintiff Jeffrey May, a high school teacher in the Edison Township school system, objected to enforcing, participating in or requiring students to participate in the minute of silence. He was threatened with disciplinary proceedings by a representative of the Edison Township Board of Education were he not to comply with the statute and local directives regarding it.

In their answer, Cooperman and the Department of Education ("the State defendants"), denied that Cooperman was charged with implementing, enforcing and promulgating P.L.1982, Ch. 205, as alleged in the complaint. They asserted that the statute imposed no duty on them, but rather imposed a duty on principals and teachers. The text of the statute directs principals and teachers to "permit students of each school to observe a 1 minute period of silence." However, N.J.S.A. 18A:4–23 pro-

vides that the "commissioner shall have supervision" of the schools.

The State defendants also denied that they had any role in the passage of P.L. 1982, Ch. 205, or that they ever implemented, enforced or threatened to implement or enforce the statute. These defendants sent no guidelines or regulations for implementation of the statute to the local school districts; they merely distributed copies of it. The Attorney General publicly stated that teachers would not face any sanctions from the State for refusing to observe the law. (Appendix to Defendants' Brief, p. 1a).

The State, defendants assert that they could not implement or enforce the statute in view of the positions taken by the Governor and Attorney General regarding it. Both had stated their beliefs that P.L.1982, Ch. 205 was unconstitutional. The act only became law because the State legislature overrode the Governor's veto. The Attorney General announced before the filing of this action that he would not defend the statute if it was challenged. (Appendix to Defendants' Brief, p. 1a–2a). In response to the Attorney General's statements, the chairman of the New Jersey Senate Judiciary Committee announced plans to sponsor a bill that would require the Attorney General to defend all State laws in court regardless of his opinion as to their constitutionality. (*Id.* at p. 2a).

Pursuant to N.J.S.A. 52:17A–4(e) and (g), the Attorney General is the sole legal advisor to all State agencies and departments. In this capacity he had exclusive control over all litigation in which the State is a party or in which its rights or interests are involved. The Attorney General has represented the State defendants in this case, and has at no time presented any defense of the statute.

On the same day as they filed their complaint, January 10, 1983, plaintiffs moved for a temporary restraining order, enjoining enforcement of the statute, pending a hearing for preliminary injunction. I entered a temporary restraining order that day, restraining enforcement of the statute

and, by subsequent order, dated January 14, 1983, instructed defendant Cooperman to advise all local school districts of the order. The parties later voluntarily agreed to extend the restraints until trial.

At the January 10 hearing, counsel for the New Jersey Legislature appeared and requested permission for the Legislature to intervene to defend the statute. On January 18, 1983, an order was filed permitting the intervention of Alan J. Karcher, in his representative capacity as Speaker of the New Jersey General Assembly; Carmen A. Orechio, in his representative capacity as President of the New Jersey Senate; and the New Jersey Senate. I permitted this intervention because the Legislature had been responsible for the enactment of the statute and because no other party defendant would defend it.

The State defendants took no part in discovery in the case. During the pendency of the case, plaintiffs executed a stipulation dismissing with prejudice the original defendants. I refused to accept this stipulation out of concern for the effect it might have on the jurisdictional posture of the case. The State defendants did not participate at trial, but merely entered an appearance at the first day of trial, stated that they would not participate, and absented themselves thereafter.

The defendant-intervenors took an active role in defense of the statute, beginning the day the complaint was filed. They sought and carried the burden of defending the constitutionality of P.L.1982, Ch. 205, a bill which they had enacted into law over the Governor's veto.

After trial on the merits, an opinion was filed on October 24, 1983, which found P.L. 1982, Ch. 205 unconstitutional and granted plaintiffs declaratory and injunctive relief enjoining enforcement and/or implementation of the statute. In that opinion, I denied plaintiffs' requests for awards of attorneys' fees and costs against both the defendants and the defendant-intervenors, stating:

Under 42 U.S.C. § 1988 a prevailing party may in appropriate circumstances be entitled to recover attorneys fees. In the unusual circumstances of this case I do not believe that such an award is warranted.

The named defendants did not contest the action on the merits. They were not responsible for enactment of the legislation under review. There is no reason why they should be required to pay plaintiffs' attorneys fees.

The intervenors did oppose plaintiffs on the merits. However, even though they did not prevail, their participation in the case served a valuable public purpose. Without their participation the facts and the law would not have been developed adequately. In a difficult case such as this in which important public interests are involved, it was essential that the facts be developed and the law fully presented. Since intervenors' role in this case contributed significantly in that regard it would be inappropriate to charge them with attorneys fees.

On November 15, 1983, judgment was entered, consistent with the October 24 opinion. On November 28, plaintiffs filed their motion for reconsideration of the denial of attorneys' fees.[1] Prior to hearing on their motion for reconsideration, plaintiffs informed the court that they sought fees and costs from the defendant-intervenors and the State defendants and not from the defendant local boards of education. Counsel for the local boards, after learning from plaintiffs that plaintiffs were not seeking an award against them, were absent from the hearing. At the hearing, plaintiffs attempted to reinstate their request for an award against the local boards.

On December 9, 1983, the defendant-intervenors filed a notice of appeal from the judgment. On December 13, they filed a motion seeking an extension of time to file a notice of appeal.

## CONCLUSIONS OF LAW

### I. Motion for an Extension of Time to File Notice of Appeal

As a preliminary matter, I consider defendant-intervenors' motion for an extension of time to file notice of appeal. Because plaintiffs filed a timely motion under Fed.R.Civ.P. 59(e), the time for filing notice of appeal will not begin to run until the entry of the order deciding that motion. Fed.R.App.P. 4(a)(4).[2]

Even if plaintiffs' motion had not been timely, defendant-intervenors have no need for an extension; they filed a timely notice of appeal on December 9, 1983. Fed.R.App.P. 4(a)(1). Defendant-intervenors' motion is denied.

### II. Motion to Reconsider Denial of Attorneys' Fees and Costs

The Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988, states in pertinent part:

> In any action or proceeding to enforce a provision of ... [section] 1983 ... of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

---

1. Plaintiffs' motion for reconsideration was timely under the ten day rule of Fed.R.Civ.P. 59(e). The tenth day following entry of judgment would ordinarily have been Friday, November 25. However, because this was the day after Thanksgiving Day, Chief Judge of the District of New Jersey, Clarkson Fisher, closed the court, making that day a legal holiday. Plaintiffs were advised of this fact by the court. Plaintiffs' motion was therefore due by Monday, November 28, when they, in fact, filed it.

2. Fed.R.App.P. 4(a)(4) stated in pertinent part: "If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: ... (iii) under Rule 59 to alter or amend the judgment ... the time for appeal for all parties shall run from the entry of the order ... granting or denying any ... such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above."

The Senate Report on the bill which became § 1988 clearly sets out the rationale for an attorney's fee provision:

> The purpose and effect of S. 2278 are simple—it is designed to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed since 1866. S. 2278 follows the language of Titles II and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–3(b) and 2000e–5(k), and section 402 of the Voting Rights Act Amendments of 1975, 42 U.S.C. § 19731(e). All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

> In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

S.Rep. No. 94–1011, 94th Cong., 2d Sess. 2, reprinted in 1976 U.S.Code Cong. & Ad. News 5908, 5909–10.

Although § 1988 on its face allows the district court to award attorneys' fees "in its discretion," the statute's legislative history and judicial interpretation of the statute demonstrate that the court's discretion to deny fees is narrow. The Senate report states:

> It is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by [§ 1988], if successful, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Pig-

*gie Park Enterprises, Inc.,* 390 U.S. 400, 402 [88 S.Ct. 964, 966, 19 L.Ed.2d 1263] (1968).

*Id.* at 5912.

The "special circumstances" standard had been adopted by the United States Supreme Court and followed by the Third Circuit. The Court in *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 68, 100 S.Ct. 2024, 2033, 64 L.Ed.2d 723 (1980), stated, "the court's discretion to deny a fee award to a prevailing plaintiff is narrow. Absent 'special circumstances,' ... fees should be awarded." *See also Staten v. Housing Auth. of the City of Pittsburgh,* 638 F.2d 599, 604 (3d Cir.1980); *Jones v. Orange Housing Authority,* 559 F.Supp. 1379, 1383 (D.N.J.1983) ("While the language of § 1988 indicates that the award of fees to the prevailing party is within the Court's discretion, it is clear that this discretion is narrowly circumscribed.")

### A. The State Defendants

The State defendants assert that special circumstances exist in this case which would render an award of fees against them unjust. These defendants had no control over the enactment of P.L.1982, Ch. 205. The Governor, the head of the executive branch of the state government, of which they are a part, attempted to prevent the bill from becoming law by use of his veto power. Once the bill became law, the State defendants took no significant action to implement or enforce it, and did nothing that could be construed as a plausible threat to enforce it.

The closest plaintiffs come to alleging action by the State defendants implementing or enforcing the statute is the charge that they sent copies of the statute to the local boards and that the Attorney General failed to enter into a consent judgment declaring the statute unconstitutional. There is no indication that entering a consent judgment was ever suggested to the Attorney General or that he ever refused to do so. The State defendants' sending copies of the statute to the local board does not appear to be an act of enforcement

given the Attorney General's prior public statement that teachers would not face state discipline for refusing to implement it.

The State defendants neither contested this action, nor did they take any action to implement, enforce or threaten to implement or enforce this statute. They were in no way responsible for the litigation expenses to which plaintiffs were put.

■ As plaintiffs pointed out in argument, someone was enforcing the statute against them. However, it was not the State defendants, but rather the local defendants who implemented the statute.[3] The State defendants did nothing to encourage or defend this enforcement.

Plaintiffs argue that the State defendants' failure to contest the lawsuit is not a circumstance which should excuse them from paying plaintiffs' fees. In *Hutto v. Finney*, 437 U.S. 678, 700, 98 S.Ct. 2565, 2578, 57 L.Ed.2d 522 (1978), the Supreme Court held that fees may be awarded against the State even where the State or a State agency is not named as a party defendant. In *Hutto*, inmates in the Arkansas penal system sued prison officials for prison conditions which were held to be unconstitutional. In considering plaintiffs' application for fees against the State, the Court reasoned:

> Although the Eleventh Amendment prevented respondents from suing the State by name, their injunctive suit against prison officials was, for all practical purposes, brought against the State. The actions of the Attorney General himself show that. His office has defended this action since it began.

*Id.* at 699, 98 S.Ct. at 2578. In support of the conclusion that the State could be assessed fees for the action of the prison officials, the Court cited the Senate Report on § 1988, which states that in cases to be covered by § 1988, where defendants "are

often State or local bodies or State or local officials":

> it is intended that the attorneys' fees, like other items of costs, will be collected either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).

S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5, reprinted in 1976 U.S.Code Cong. & Ad. News 5908, 5913.

Plaintiffs attempt to cite *Hutto* for the proposition that fees may be assessed against individuals or entities whether or not they were parties and whether or not they litigated the case. This interpretation misreads *Hutto*. The import of the Court's holding is that when the State is the real party in interest, in the sense that state executive officials or entities are sued for violating constitutional rights, and the state, through its attorney general, fully litigates the case, the state may be required to pay attorneys' fees.

Here plaintiffs are not seeking fees from the State. Instead, they look to a State official and a State entity. These defendants neither took any action in violation of plaintiffs' constitutional rights, nor did they litigate or have the State litigate on their behalf the issues in the case.

Plaintiffs suggest that the State defendants may be required to pay attorneys' fees merely because they possessed the authority to enforce or implement the unconstitutional statute. Plaintiffs rely on *Consumers Union v. Virginia State Bar*, 688 F.2d 218 (4th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 3124, 77 L.Ed.2d 1375 (1983). In that case Consumers Union filed suit under § 1983 against the Virginia State Bar, the Virginia Supreme Court and it's Chief Justice, seeking to have a Virginia Bar Disciplinary Rule prohibiting attorney advertising declared unconstitutional and permanently enjoined. The Virginia

---

**3.** By informing defendant local boards that no award would be sought from them, plaintiffs waived their right to seek fees from these defendants. A party may not seek relief at a hearing from which its adversary is absent because of the party's representations that such relief would not be sought.

Supreme Court had responsibility for both promulgating and enforcing disciplinary rules, and the State Bar shared in the enforcement responsibilities.

The case came before the Fourth Circuit after the district court had awarded plaintiff attorneys' fees against the Virginia Court and denied fees against the State Bar. The Circuit Court first acknowledged that for promulgation of the challenged rule the Virginia Court enjoyed absolute immunity from suit, and that an award of fees for the Virginia Court's role in promulgating the rule would have been erroneous. *Id.* at 221. However, the court upheld the award against the Virginia Court because it was based on the Court's role in enforcing the rule. *Id.*

The Court then went on to consider the decision of the district court that special circumstances existed which rendered awarding fees against the State Bar unjust. The district court's decision was based on the fact that the Bar took steps to amend the rule to conform to constitutional standards. The Circuit reversed on the ground that the State Bar had taken several actions which it interpreted as enforcement of the rule and that the Bar's ameliorative actions were only taken after the lawsuit was instituted. *Id.* at 222.

Plaintiffs contend that *Consumers Union's* award of fees against the State Bar establishes that enforcement authority alone is a basis for assessment of fees. I do not believe this is the case. The court's assessment of fees against the State Bar was premised on its actions in enforcing the disciplinary rule. In fact, the court quoted the United States Supreme Court, which, in considering *Consumers Union* at an earlier stage, stated:

> Of course, as *Boyle v. Landry* [401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971)] and *O'Shea v. Littleton* [414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)] indicate, mere enforcement authority does not create a case or controversy with the enforcement official.

*Consumers Union v. Virginia State Bar, supra,* 688 F.2d at 221, quoting *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 736, n. 15, 100 S.Ct. 1967, 1977, n. 15, 64 L.Ed.2d 641 (1980).[4]

Finally, plaintiffs argue that the State defendants' good faith, demonstrated by their refusal to litigate the case, should not save them from an assessment of fees. In support of this assertion, plaintiffs cite cases holding that fees should be assessed against defendants who in good faith implemented a policy later deemed unlawful, *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), or who promptly settled the lawsuit brought against them, *Jones v. Orange Housing Authority,* 559 F.Supp. 1379 (D.N.J.1983).

These cases are inapposite. In each one, defendants had taken substantial actions which had violated plaintiffs' constitutional rights, even if they did not realize at the time that they were violating rights or·if they promptly reached a settlement under which they ceased violating the rights. In

---

**4.** There remains some uncertainty as to whether an award of attorneys' fees may be premised on enforcement authority alone. In dissenting from the denial of certiorari in *Consumers Union,* after the decision discussed above, Chief Justice Burger observed that there had been no evidence on the record that the Virginia Supreme Court had ever exercised its enforcement powers. For this reason, he argued that the fee award could not stand against the Virginia Court. He stated, "I would grant *certiorari* to consider whether an award of attorneys' fees against a judge may be premised solely on the existence of enforcement authority." *Supreme Court of Virginia v. Consumers Union,* — U.S. —, —, 103 S.Ct. 3124, 3127, 77 L.Ed.2d 1375, 1378 (1983).

Considering the discussion by the Fourth Circuit regarding *Boyle* and *O'Shea* and its emphasis on the State Bar's enforcement activities in justifying a fee against the Bar, I do not take the Fourth Circuit's opinion to hold that fees may be assessed based on enforcement authority alone. It appears to me that the Circuit Court ·believed that the Virginia Court's activities in enforcing the rule had already been established.

But even if the case permits such fee awards, it does not mandate them. Here, unlike in *Consumers Union,* the State defendants in this case opposed the unconstitutional statute at every stage. An assessment of fees against them would be manifestly unfair.

this case, the State defendants never took any action of any significance in violation of plaintiffs' First Amendment rights.[5]

■ The State defendants also make a statutory argument that fees cannot be assessed against them. They contend that they were not and could not have been found liable under 42 U.S.C. § 1983 because they never took any action against plaintiffs and therefore the state action requirement of § 1983 was not met. *See Flagg Brothers v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). They assert that relief was granted in the case under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and not under § 1983. Section 1988 provides for fee awards in actions to enforce certain statutes, including § 1983, but not including the Declaratory Judgment Act. 42 U.S.C. § 1988. The State defendants conclude that since the federal courts generally may not award attorneys' fees without express statutory authorization, *Alyeska Pipeline Service v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), no fees may be assessed against them in this case.

This superficially attractive argument has several flaws. First, the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, does not confer jurisdiction. It provides a remedy where a court has jurisdiction pursuant to another statute. Here suit was brought pursuant to 42 U.S.C. § 1983 even though the remedy sought and granted was declaratory and injunctive in nature. Second, the state action requirement has been met. The State defendants' action in sending out copies of the statute and inaction in controlling the local board may amount to state action, even if they seem rather insignificant. In addition, it is clear that the legislature's passage of the statute constituted state action, whether or not the legislature is immune from liability for that action. The State defendants have not

shown that fees cannot be assessed against one defendant once a § 1983 violation is established against another defendant. To the contrary, in *Vulcan Society of Westchester City v. Fire Dept. of the City of White Plains,* 533 F.Supp. 1054, 1061–62 (S.D.N.Y.1982), the court held an intervenor-defendant union liable for fees under § 1988. The fees were assessed against the union, despite the fact that as a private organization, independent of the Fire Department defendant, it could not have committed any "state action". The court was not attributing state action to the union since it explicitly stated, "A suit against the defendants here did not amount to a suit against the unions." *Id.* at 1061.

Numerous other cases demonstrate that it is not absolutely necessary that a violation of one of the statutes enumerated in § 1988 be established for a court to award fees under § 1988. For example, fees have been awarded where the court does not reach a decision on the merits of the § 1983 claim, but where a plaintiff "prevails," within the meaning of § 1988 by settlement or other resolution. *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); *Jones v. Orange Housing Authority,* 559 F.Supp. 1379, 1382 (D.N.J.1983).

The State defendants' argument that they are statutorily protected from a fee award is not persuasive. They must look to the discretionary special circumstances standard to escape a fee award against them.

■ The position of the State defendants presents a special circumstance in which the award of fees would be unjust. The State defendants, and the executive branch of the State, which represents them, have consistently taken a principled position in refusing to defend a statute which the State's highest executive legal authority

---

**5.** If the State defendants actually had the authority to prevent the local boards from implementing the statute, their failure to do so could have constituted a violation of plaintiffs' rights. The State defendants did have supervisory authority over the public schools. However, plaintiffs have offered no evidence to show that the State defendants had the authority to prevent others from implementing a validly enacted statute, particularly one directing action of others—teachers and principals—and not of them.

deemed unconstitutional. To assess fees against them would remove much of the incentive for defendants in like circumstances to take such principled positions in the future. If fees will be assessed whether or not State defendants enforce a statute, they may well choose to enforce it, when doing so will allow them to avoid the wrath of an aroused legislature or avoid other unpleasant political consequences.

The State defendants have not opposed a single motion by plaintiffs in this case until this one. Equity requires that fees not be assessed against them.

### B. *The Intervenor-Defendants*

The intervenor-defendants representing the New Jersey Legislature actively litigated this case from the day plaintiffs filed suit. Their position—that the statute was constitutional—was squarely rejected. The defendant-intervenors acknowledge that a prevailing party in a § 1983 is entitled to attorneys' fees and that normally a party in their position would be obliged to pay those fees.

■ However, the defendant-intervenors assert that because they represent the New Jersey Legislature, they enjoy absolute legislative immunity and may not be assessed attorneys fees. It is true, of course, that legislators acting in a legislative capacity are absolutely immune from suits for damages under § 1983. *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Where an award of fees under § 1988 is based on legislative activity for which there is absolute immunity—such as for promulgation of legislation—the award cannot stand. *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 739, 100 S.Ct. 1967, 1978, 64 L.Ed.2d 641 (1980).

It is quite clear that if plaintiffs had brought a § 1983 suit against the New Jersey Legislature for promulgating P.L. 1982, Ch. 205, the Legislature could have immediately obtained summary judgment based on its absolute legislative immunity, and it could not have been assessed fees. However, that is not the situation in this case.

Plaintiffs did not file suit against the Legislature. The Legislature itself, through the Speaker of the General Assembly and the President of the Senate, moved to intervene in the case. The Legislature was permitted to intervene because it was responsible for enacting the statute and because no other party defendant was willing to defend the statute. The Legislature sought to perform a task which normally falls to the executive branch, but which, in this case, the executive branch refused to perform.

Plaintiffs contend that by intervening in the suit, the defendant-intervenors waived their legislative immunity and opened themselves to an assessment of costs. In *Wisconsin Socialist Workers 1976 Campaign Committee v. McCann*, 460 F.Supp. 1054 (E.D.Wis.1978), plaintiffs filed suit under § 1983 challenging the constitutionality of provisions of the Wisconsin Campaign Finance Act. The State of Wisconsin intervened as a defendant to defend the constitutionality of the statute. After the court found challenged provisions of the statute unconstitutional, it assessed fees against the intervenor-defendant State, stating:

> When any person or entity interjects itself into an action and the party has a very strong interest in the outcome of the case, that party subjects itself to any costs that may be incurred in the action. In this Court's opinion, it would be inequitable to allow the State to intervene and vigorously defend its statute and then claim it is not liable for costs incurred in the action.

*Id.* at 1058. Similarly, in *Planned Parenthood Ass'n of Southeastern Pennsylvania, Inc. v. Commonwealth of Pennsylvania*, 508 F.Supp. 567 (E.D.Pa.1980), the State of Pennsylvania intervened as a defendant in a case challenging the constitutionality of the Pennsylvania Abortion Control Act of 1974. The court assessed fees against the State.

In this case, as in *Wisconsin Socialist Workers*, the defendant-intervenors interjected themselves into the lawsuit because

of their strong interest in the outcome. Legislators normally do have common law absolute immunity for their legislative acts. But states also normally enjoy absolute immunity from § 1983 actions, under the Eleventh Amendment of the United States Constitution. However, when they are the real party in interest, and when they actually interject themselves into the lawsuit as in *Wisconsin Socialist Workers*, they lose their immunity and may be forced to pay attorneys' fees.

■ In this case, the defendant-intervenors were clearly the party in interest. Concerned that the officials charged with enforcement would not do so vigorously enough, the defendant-intervenors abandoned their legislative role and took on a quasi-enforcement role by intervening to defend the statute. Their legislative immunity should not protect them when they step outside the function for which their immunity was designed. Defendant-intervenors' reliance on *Supreme Court of Virginia v. Consumers Union, supra,* is misplaced. The Legislature here was not sued, as was the Court there. The Legislature in this case chose to intervene and to assume the entire defense of the statute.

There are no special circumstances indicating that the defendant-intervenors should be shielded from assessment of attorneys' fees. Upon further consideration of the question, the factors to which I alluded in my opinion on the merits of the case do not constitute such circumstances. Courts commonly assess fees against intervenor-defendants against whom plaintiffs had no cause of action. In *Vulcan Society of Westchester County v. Fire Dept. of City of White Plains,* 533 F.Supp. 1054, 1061–62 (S.D.N.Y.1982), the fact that the intervening defendant unions were not in a position to grant or deny the relief sought by plaintiffs who prevailed in an employment discrimination action did not exempt

the unions from liability for their share of plaintiffs' attorneys' fees under § 1988, where the unions' efforts imposed substantial costs on plaintiffs and plaintiffs prevailed over defendants on most issues.

In *Haycraft v. Hollenbach,* 606 F.2d 128 (6th Cir.1979), a county judge intervened in his official capacity, on behalf of the people of his county, to offer an alternative school desegregation plan to the plan implemented by the district judge. The district judge rejected his plan, and granted plaintiffs' application for assessment of fees against him based on § 718 of the Emergency School Aid Act of 1972, 20 U.S.C. § 1617. In upholding the fee award, the Circuit reasoned that:

> The alternative desegregation plan proposed by appellant imposed a substantial barrier to the realization of the full constitutional rights of appellees.

*Id.* at 132.[6]

The intervenor-defendants here also imposed substantial costs on plaintiffs and a substantial barrier to the realization of plaintiffs' constitutional rights. Their intervention made the determination that the statute was unconstitutional more costly and time-consuming. While their defense of the statute assisted in the development of the facts and law, thereby serving what I considered a valuable public function, the same could be said for the defendants in many § 1983 cases. The fee statute contemplates fee assessment against defendants notwithstanding that type of contribution. Having intervened, the Legislature stands in the same position as any other defendant who has defended an unconstitutional statute.[7]

There is a final, pragmatic reason why the defendant-intervenors should be assessed fees. In this case, the State defendants refused to defend the lawsuit because of a good faith belief that the statute was

---

6. It is worth noting that even though the judge intervened in his official capacity fees were still assessed. When he stepped outside of his judicial function by intervening in the case he lost his immunity.

7. Defendant-intervenors claim they "preserved" their immunities on filing suit. They were never informed they could preserve their immunities, and their statement of "preservation" has no legal significance.

unconstitutional; the Legislature chose to intervene and litigate vigorously because of a strong interest it took in the statute. The result was that plaintiffs were put to extensive and costly litigation, but are unable to recover fees from the party from whom they would normally recover fees under § 1988. Were they also unable to recover from the defendant-intervenors, I believe the intent of the fee statute would be thwarted.

If the Legislature were deemed immune, a major loophole would be created in the statutory scheme for reimbursing plaintiffs. Original defendants, otherwise liable for fees, could remain passive in § 1983 actions, leaving defense of the challenged laws to legislators or others claiming to possess immunity from fee liability. States, by this method, could defend constitutional challenges to their statutes without having to pay plaintiffs' fee awards, which Congress has acknowledged to be "an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies" which the civil rights laws contain. S.Rep. No. 94–1011, 94th Cong., 2d Sess. 2, reprinted in 1976 U.S.Code Cong. & Ad. News, 5908, 5909–10. The only way to avoid this eventuality is to assess fees against intervenors who interject themselves into § 1983 actions and thereby abandon the immunities which they enjoy when performing protected functions.

I am not sure in the last analysis that there is a practical difference between awarding attorneys' fees against the named State defendants in this case and awarding such fees against the intervening legislators. In either event the expense will probably be borne by the public. However, there is some virtue in allocating the burden of paying attorneys' fees between the parties in the case. It will make clear who is responsible for the constitutional deprivation and who has brought the burden of paying attorneys upon the public treasury.

Plaintiffs' attorneys are requested to submit in affidavit form proof of the legal services which they performed and the other information required so that an award can be made pursuant to the criteria set forth in *Hughes v. Repko*, 578 F.2d 483 (3d Cir.1978). The intervenors may submit papers in opposition to the amount of fees and expenses requested within one week of service upon them of plaintiffs' application.