ROTH, Circuit Judge,
Concurring:
I agree with the Majority that the asserted legislative immunity from discovery has no basis in law and must be denied. The immunity asserted is unprecedented in its scope and breadth. The four Legislative Leaders, who knowingly and voluntarily intervened as defendants in this litigation and wish to remain as such, argue that they should enjoy all the rights associated with being parties to federal litigation while bearing none of the burdens or responsibilities. I have found nothing to support the idea that a state legislator who remains a party to civil litigation is immune from compliance with discovery. Indeed, not only has such a privilege never been recognized by this, or any other, court, but it might conceivably violate an opposing party’s due process rights were we to recognize it.
In my view, however, the lack of merit in the Legislative Leaders’ claim of immunity does not mean, as the Majority holds, that we do not have jurisdiction to hear the appeal under the Collateral Order Doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 641, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and its progeny. Rather, the lack of merit means that the claim of immunity should be denied for just that reason — it lacks merit. It is established law in this Circuit that the denial of a claim of legislative immunity is immediately reviewable under Cohen. See Larsen v. Senate of the Commonwealth of Pennsylvania, 152 F.3d 240, 245 (3d Cir.1998). In my view, Larsen establishes our jurisdiction here to review the merits of the claimed immunity.
It is true that the Legislative Leaders raise their claimed privilege in a different context — as immunity from discovery while remaining parties to the civil action, not as immunity from liability or from having to be parties to the action at all. See, e.g., Supreme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719, 732-33, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). But that does not, as the Majority holds, change the fact that the Legislative Leaders assert a privilege that is a by-product of their status as legislators, just as their recognized immunity from liability and from having to defend themselves is a by-product of their status as legislators. See id. Clearly, the immunity that the Legislative Leaders claim is “legislative.” The merits of their claimed privilege must be irrelevant to our jurisdictional analysis.
In my view, the Majority errs by conflating a merits analysis into its jurisdictional conclusion. The Majority recognizes that the Legislative Leaders claim that their immunity falls within the “legislative immunity” rubric, that the Legislative Leaders claim “a form of legislative immunity....” Majority at 522. When the Majority subsequently states that the claimed immunity is “heretofore unknown in the law,” Majority at 522, and that the Legislative Leaders “assert a privilege *528 that does not exist”, id. at 525, that sounds to me like a decision on the merits. The Majority’s conclusion that we lack jurisdiction appears to rest on the following reasoning: A claim of legislative immunity in a new context, which lacks merit, ceases to be a traditionally recognized privilege and is not reviewable under our decision in Bacher v. Allstate Ins. Co., 211 F.3d 52, 57 (3d Cir.2000) (holding that the collateral order doctrine should not be extended beyond the narrow categories of trade secrets and traditionally recognized privileges). But this begs a question: If the asserted privilege is not “legislative” privilege because it is not a “colorable claim” or is not raised in the appropriate context, what is it?
I believe that simply labeling the defense as “legislative” privilege, in a case involving legislators acting in a legislative capacity, is sufficient to trigger our collateral order jurisdiction, opening the door to immediate appellate review of the denial of such a claim, regardless of the fact that the “legislative” immunity arises in a new or different context or may lack merit. To my mind, our jurisdiction in the instant case is compelled by our decision in Larsen, where we expressly held that we had collateral order jurisdiction over the denial of claims of legislative immunity. See Larsen, 152 F.3d at 245.
Moreover, the District Court’s order compelling the Legislative Leaders to comply with discovery fits within the three-prong analytical framework that we have established for determining whether an order is reviewable under Cohen: 1) it conclusively resolves the question of whether the Legislative Leaders must comply with discovery; 2) it resolves an important issue, immunity from discovery of legislators who are parties to a case, that is separate from the merits of the case; and 3) it effectively is unreviewable on appeal from a final judgment because the Legislative Leaders would be required to comply with discovery before they can later assert their immunity. See In re Ford Motor Co., 110 F.3d 954, 958 (3d Cir.1997). Particular emphasis should be placed on the last prong, granting jurisdiction over those orders that would be effectively unreviewable on appeal from a final judgment, see Cunningham v. Hamilton County, 527 U.S. 198, 204, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999); Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); Ford Motor Co., 110 F.3d at 958, meaning that the legal and practical value of the asserted privilege would be destroyed if not vindicated prior to trial. See Lauro Lines SRL v. Chasser, 490 U.S. 495, 498-99, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989).
The Majority relies on our decision in Bacher, supra. But that decision is not as limiting as the Majority suggests. Bacher does not stand for the proposition that a traditionally recognized privilege over which we would have collateral order jurisdiction, such as legislative immunity, ceases to be a traditionally recognized privilege merely because it is raised in a new context and therefore ceases to be a color-able or meritorious claim of that privilege. Bacher did not involve a claim of a particular, identifiable privilege but was a case in which a party to a civil action attempted to appeal a run-of-the-mill discovery order. The defendant there merely sought to avoid complying with simple discovery requests on the ground that the information sought (the amounts of past settlements paid) was confidential and not relevant and its disclosure would violate public policy, see Bacher, 211 F.3d at 53, but not because any privilege or immunity was implicated. Our conclusion that we lacked jurisdiction was not a new limitation on the collateral order doctrine but rather a consistent application of the long-standing *529 rule that simple discovery orders are not final orders subject to immediate review. See Bacher, 211 F.3d at 58 (quoting Ford Motor Co., 110 F.3d at 958). Here, by contrast, the Legislative Leaders assert a defined, specific, well-established, traditionally recognized privilege or immunity, albeit with a twist. But that twist, regardless of its effect on the merits of the privilege claim, does not affect our jurisdiction and does not turn this case into Bacher — the claimed privilege remains legislative, it remains traditionally recognized, and it therefore should remain immediately reviewable.
Nor, as the Majority suggests, see Majority at 526, does Bacher require us to conduct a confined examination of the merits of the claimed privilege, only of the nature of the privilege, that is, of the type of immunity asserted. I suggest no differently. As I see it, we must look at the record, determine the nature or type of immunity asserted, and evaluate whether it is a traditionally recognized privilege, such as legislative immunity; this is precisely what Bacher commands. But looking at whether the immunity asserted is legislative, meaning asserted by legislators based on their official activity, and thus traditionally recognized, is not a merits determination. I have not taken “a peek at the merits,” Majority at 526, just at the nature of the privilege asserted. Only after concluding that the asserted privilege is legislative and that we therefore have collateral order jurisdiction, do I even broach the necessarily separate and distinct question of whether that claim of legislative immunity has merit in its current context.
I am concerned with the impact that this ruling may have on future cases. It is not contested that plaintiffs could challenge the legality of legislative decisions by suing the executive officers charged with carrying out those decisions.* Further, it is clear that plaintiffs could sue municipalities for legislative actions and the municipalities themselves are not entitled to legislative immunity. See Carver v. Foerster, 102 F.3d 96, 104 (3d Cir.1996). It also is clear that the individual legislators could not be named as defendants in such a case, or could be dismissed at an early stage if the suit were based upon their legislative activities. See Bogan v. Scott-Harris, 523 U.S. 44, 52-54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998); Supreme Court, 446 U.S. at 733-34, 100 S.Ct. 1967. But we have not addressed whether a non-party legislator would be legislatively immune from being made to comply with subpoenas for discovery in a civil action.
The Fourth Circuit has decided this issue, holding that non-party legislators cannot be made to testify or provide evidence as to their legislative activities or their motives. See Burtnick v. McLean, 76 F.3d 611, 613 (4th Cir.1996); Berkley v. Common Council of the City of Charleston, 63 F.3d 295, 303 n. 9 (4th Cir.1995) (en banc) (suggesting, but not holding, that prior law indicates that members of the council would be privileged from testifying). We have, on the other hand, noted that the intent-based inquiry that is part of certain doctrines in constitutional law necessarily means that judicial inquiry into *530 legislative motive is not per se forbidden in such cases. See Carver, 102 F.3d at 104; see also Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 268 n. 18, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (stating that in some extraordinary circumstances, the members of a legislative body might be called to testify about legislative actions, although this is usually to be avoided). We also have held that a state legislator may be subpoenaed to provide evidence to a grand jury of which the legislator is not the target. See In re Grand Jury (Granite Purchases), 821 F.2d 946, 958 (3d Cir.1987).
The immunity of a non-party legislator from civil discovery thus is an open issue in this Circuit, one that we may be called upon to resolve at some point. But suppose that case were to arise and the District Court were to reject the claimed privilege and order the non-party legislator to comply with the subpoena and provide testimony and discovery. Would we have jurisdiction immediately to review that order? As I read today’s decision, the answer is no. I see no way to distinguish the future case from the instant case. A privilege from discovery by a non-party legislator would be as new in this Circuit as the privilege that the Legislative Leaders seek to assert in the instant case; it would not be a traditionally recognized privilege, foreclosing our immediate review under the Majority’s reading of Bacher. We could not distinguish this future case from the instant one by saying that those legislators are asserting a legislative privilege (that is, a privilege that they possess by virtue of and in connection with their positions and activities as legislators) and that legislative immunity is a traditionally recognized privilege, because the Legislative Leaders here assert a privilege that unquestionably is “legislative” under such a definition. The only possible distinction between the instant case and the future case is that the latter might have more merit than the former, that it might be a colorable application of legislative immunity. But such consideration of the merits of a privilege must be irrelevant to the question of our jurisdiction.
If legislative privilege from civil discovery exists, either for a party, as in the instant case, or for a non-party as it may arise in the future, it exists to protect legislators from the burden of having to respond to discovery and of having to deal with the distractions and disruptions that discovery imposes on their ability to carry out their governmental functions. See Supreme Court, 446 U.S. at 733, 100 S.Ct. 1967; Larsen, 152 F.3d at 245; see also Mitchell v. Forsyth, 472 U.S. 511, 529-30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (same with respect to qualified executive immunity). But a privilege from discovery (assuming, arguendo, it exists in either situation) is worthless if it cannot be vindicated prior to the legislators being forced to comply with discovery. Yet the Majority’s approach effectively renders any possible claim of a legislative discovery privilege unreviewable until after discovery has been obtained. I cannot agree with such a limitation on our appellate jurisdiction.
Because I find that we do have jurisdiction over the Legislative Leaders’ appeal, my next step would be to reach the merits of the claimed privilege. I would reject the privilege on its merits. In this regard, much of my reasoning is similar to that of the Majority. Indeed, that suggests to me that the Majority is, in fact, conducting a merits analysis of the immunity claim and, in effect, rejecting the Legislative Leaders’ claim on that basis.
The Legislative Leaders knowingly, willingly, and voluntarily entered this ease by intervening as defendants. They explicitly wish to remain as defendants. And they *531 repeatedly insist that they should be treated the same as all other defendants, as if they had been named in the original filing, entitled to all the privileges and rights of parties to civil litigation. It follows, I believe, that they waived any immunity from discovery by the decision to enter and remain in the case and to assert their rights as defendants.
The Legislative Leaders have pointed to no case in which a legislator who is a party to a civil action has been held to be immune from discovery. Every case the Legislative Leaders cite in their briefs and at oral argument involves attempts to take discovery in a civil case from legislators who are not parties to the case. See Burtnick, 76 F.3d at 613; Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408, 421 (D.C.Cir.1995). As discussed supra, we have not determined whether such immunity exists in this Circuit and I offer no opinion as to whether such privilege should exist. But none of these cases supports the proposition that a legislator who chooses to become a party to a civil action is immune from discovery.
The party/non-party distinction is critical. Legislative immunity is intended to protect legislators from having to divert their time, energy, and attention from their legislative tasks in order to defend themselves or to provide evidence in a civil action. It protects legislators from the potential harassment, disruption, and distraction that would come with the burden of having to defend themselves and/or provide evidence. See Supreme Court, 446 U.S. at 733, 100 S.Ct. 1967; Grand Jury, 821 F.2d at 968. But the prophylactic function of the immunity is undermined once the Legislative Leaders choose to join the case. They have willingly subjected themselves to any disruptions and distractions that go with being party to civil litigation. They cannot now claim that they should be protected from the disruptions and distractions that they voluntarily undertook.
The Legislative Leaders attempt to downplay the significance of their intervention. Although they certainly recognize that legislative immunity may be waived, see Government of the Virgin Islands v. Lee, 775 F.2d 514, 520 n. 7 (3d Cir.1985) (noting that criminal defendant legislator’s claim that he was impermissi-bly deposed was “unpersuasive” where the deposition was voluntary and the defendant waived any privilege); Burtnick, 76 F.3d at 613 (holding that non-party’s privilege from being compelled to testify could be waived), the Legislative Leaders suggested at oral argument that intervening did not waive their privilege because any such waiver was not sufficiently explicit. I cannot conceive, however, of a more explicit waiver of immunity than willingly submitting oneself to the jurisdiction of a federal district court. If the Legislative Leaders had been named as defendants in the first instance and had failed to assert their legislative immunity as an affirmative defense, they unquestionably could be deemed to have waived that immunity. Intervening places them in the identical position.
I find helpful the analysis of the District Court in an analogous situation, in May v. Cooperman, 578 F.Supp. 1308 (D.N.J.1984), aff'd. in part, appeal dismissed in relevant part, 780 F.2d 240 (3d Cir.1985). In May, four members of the New Jersey legislature, representing that body, intervened as defendants in a § 1983 action to defend the constitutionality of a state statute because the executive refused to defend it. After the law was struck down, the District Court assessed attorneys’ fees against the legislative defendants, under 42 U.S.C. § 1988; the legislators argued that they were absolutely immune from an award of attorneys’ fees for their legislative activity. The District Court rejected *532 this argument, holding that the legislators had interjected themselves into the lawsuit by intervening and becoming parties, thereby waiving their legislative immunity from incidents of suit, such as attorneys’ fees. See May, 578 F.Supp. at 1316-17. The District Court distinguished prior immunity cases, such as Supreme Court, because the New Jersey legislators had chosen to intervene and assume defense of the statute. See id. at 1317.
Similarly, compliance with discovery, and being compelled to comply with requests for documents, information, and testimony, are incidents of suit. Regardless of whether the Legislative Leaders would have been immune from such incidents as non-parties, it is clear that they surrendered any immunity from discovery by voluntarily and willingly entering and remaining in the action as party defendants.
I close by emphasizing that my analysis and the Majority’s analysis are very similar in denying the asserted legislative immunity from discovery. The difference is that the Majority concludes that the lack of merit takes the immunity outside the bounds of legislative immunity and divests us of collateral order doctrine jurisdiction. I conclude that, because the asserted immunity is “legislative,” we have collateral order jurisdiction. The lack of merit to the claim of immunity means the claim should be denied on its merits. I would affirm the judgment of the District Court because the Legislative Leaders have waived any immunity from discovery. They are as subject to production of documents and of testimony as is any other party.
For the above reasons, I concur only in the judgment of the Court.

 It is worth noting that not all the Legislative Leaders' activities in funding education could be deemed legislative; some activities could be deemed executive and legislative immunity would not attach to such activities. See Carver v. Foerster, 102 F.3d 96, 101 (3d Cir.1996) (an officer's executive or administrative actions are separate from legislative actions). For example, the record reflects that two of the Legislative Leaders are ex officio members of the Pennsylvania Board of Education, an executive department; any actions in that role properly should be deemed executive.