

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2002

# Planned Parenthood v. Atty Gen NJ

Precedential or Non-Precedential: Precedential

Docket No. 01-2581

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Planned Parenthood v. Atty Gen NJ" (2002). *2002 Decisions.* Paper 387.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/387

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed July 11, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2581

PLANNED PARENTHOOD OF CENTRAL NEW JERSEY;
HERBERT HOLMES, M.D.; DAVID WALLACE, M.D.;
GERSON WEISS, M.D., ON BEHALF OF THEMSELVES
AND THEIR PATIENTS

v.

*THE ATTORNEY GENERAL OF THE STATE OF
NEW JERSEY; NEW JERSEY BOARD OF MEDICAL
EXAMINERS; THE COMMISSIONER OF THE
NEW JERSEY DEPARTMENT OF HEALTH AND
SENIOR SERVICES

**NEW JERSEY LEGISLATURE, by and through,
DONALD T. DIFRANCESCO, in his capacity as President
of the New Jersey Senate and as the Representative of the
New Jersey Senate; JACK COLLINS, in his official capacity
as Speaker of the New Jersey General Assembly and as
the Representative of the New Jersey General  Assembly
(Intervenor in D.C.), Appellants

*(Amended Pursuant to F.R.A.P. 43(c)(2))
**(Amended in accordance with Clerk's Order
dated 12/12/01)

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civ. No. 97-cv-06170)
District Judge: Honorable Anne E. Thompson

Argued: March 7, 2002

Before: BECKER, Chief Judge, ALITO and
RENDELL, Circuit Judges.

(Filed July 11, 2002)

RICHARD F. COLLIER, JR.,
 ESQUIRE (ARGUED)
DAVID J. TREIBMAN, ESQUIRE
Collier, Jacob & Mills
580 Howard Avenue
Corporate Park III
Somerset, NJ 08873

Counsel for Appellants

LEON FRIEDMAN, ESQUIRE

(ARGUED)
148 East 78th Street
New York, NY 10021

DARA KLASSEL, ESQUIRE
Planned Parenthood Federation
 of America
810 Seventh Avenue
New York, NY 10019

TALCOTT CAMP, ESQUIRE
LOUISE MELLING, ESQUIRE
Reproductive Freedom Project
American Civil Liberties
 Union Foundation
125 Broad Street, 18th Street
New York, NY 10004-2400

ED BAROCAS, ESQUIRE
American Civil Liberties Union of
 New Jersey Foundation
35 Halsey Street, Suite 4B
Newark, NJ 07102

Counsel for Appellees

2

OPINION OF THE COURT

BECKER, Chief Judge:

This action was instituted by Planned Parenthood of
Central New Jersey, Herbert Holmes, M.D., David Wallace,
M.D., and Gerson Weiss, M.D. (the "plaintiffs") against, inter
alia, the New Jersey Legislature, challenging the
constitutionality of and seeking a permanent injunction
against the enforcement of the New Jersey Partial-Birth
Abortion Ban Act of 1997 (the "Act"), ch. 262., 1997 N.J.
Sess. Law Serv. 871-71 (West), codified at N.J. Stat. Ann.
S 2A:65A-5 to 7. The plaintiffs prevailed, and the District
Court awarded them $522,992.84 in attorneys' fees
pursuant to 42 U.S.C. S 1988. The Legislature appeals the
fee award, raising objections as to the amount of the award
and the procedures followed in making it. The appeal also
presents two questions of first impression for us: (1)
whether a local rule that extends the time for filing a fee
application beyond that prescribed in Fed. R. Civ. P. 54(d)
is valid as a standing order within a proviso of that rule;
and (2) whether the New Jersey Legislature is immune from
liability for attorneys' fees, given that it was solely
responsible for the defense of the legislation at issue.

We answer the first question in the affirmative,
concluding that District of New Jersey Local Rule 52(a) is
an "order of the court" for purposes of an exception in Fed.
R. Civ. P. 54(d), thereby extending the time to file a fee
application. Since the plaintiffs filed their fee application
within the time prescribed in the local rule, we affirm the

District Court's order granting the plaintiffs' requested extension of the time to file their fee petition without motion or notice, as is allowed under Fed. R. Civ. P. 6(b)(1).

We answer the second question in the negative. We conclude that, while legislatures enjoy immunity for promulgating statutes, it makes little sense to provide them with this immunity when they step out of that role, as the New Jersey Legislature did here when it intervened to defend the constitutionality of the Act. We therefore hold that when a legislature steps out of its role and intervenes

to defend a piece of (its) legislation, which the executive branch is not willing to defend, it becomes the functional equivalent of a defendant in the case and may be liable for attorneys' fees.

With respect to the defendants' other contentions, we affirm in part and vacate in part, remanding for development of the record and further factual findings, including the clarification of the District Court's award of 25.5 hours of moot court time in preparation for oral argument, which does not seem justified by the present record. We reverse outright the District Court's award of fees for "observing" this Court during oral argument, concluding that there can be no recovery of attorneys' fees for such activity.

I. Facts and Procedural History

On December 15, 1997, the plaintiffs filed a complaint challenging the constitutionality of the Act under 42 U.S.C. SS 1983 and 1988, seeking declaratory and injunctive relief, and naming the Attorney General, in his official capacity, the New Jersey Board of Medical Examiners, and the Commissioner of the Department of Health and Senior Services as defendants. The Act had been passed by the Legislature in June 1997. After the then-Governor, Christine Todd Whitman, vetoed it on the ground that it was unconstitutional, the Legislature overrode the veto, giving the Act immediate effect. The named defendants declined to defend the Act, but put the plaintiffs"on notice that [the Act] is the law of the State of New Jersey. The Attorney General has not advised physicians . . . not to comply with this law." On December 16, 1997, one day after the complaint was filed, the Legislature alerted the District Court of its intention to intervene "to vigorously defend the constitutionality of the Act." The District Court issued a temporary restraining order enjoining enforcement of the Act, granted the Legislature's formal motion to intervene, and, with the parties' consent, extended the temporary restraining order until final resolution of the case.

After a four-day trial, the District Court entered a final judgment in favor of the plaintiffs and, on December 8,

1998, permanently enjoined the defendants from enforcing any provision of the Act. On December 17, 1998, the Legislature announced its intent to appeal. On December 24, 1998, more than 14 days after the judgment, which is the time period prescribed for the filing of a fee petition under Fed. R. Civ. P. 54(d)(2)(B), the plaintiffs moved for an extension of time to file their fee application. Based on its own local rule, which provided a 30-day deadline with the possibility of an extension, the District Court entered an order extending the time to file for attorneys' fees until 30 days after the conclusion of all appeals in the case. On January 5, 1999, the Legislature moved to vacate the extension of time and to strike the plaintiffs' fee application as untimely. The District Court denied this motion.

This Court affirmed on the merits and entered its judgment on July 26, 2000. See Planned Parenthood v. Farmer, 220 F.3d 127 (3d Cir. 2000). On August 1, 2000, the plaintiffs asked the District Court to clarify its December 24, 1998 order, which allowed them to file their fee application within "thirty days after the latest of: (1) the expiration of Defendants-Intervenor Appellant's time to file a petition for certiorari to the United States Supreme Court; (2) the denial of a petition for certiorari by the United States Supreme Court; or (3) the granting of a petition for certiorari and disposition of this case by the United States Supreme Court." By letter dated August 15, 2000, the District Court stated that the plaintiffs "have correctly understood the deadline."

On November 21, 2000, the plaintiffs filed their fee application in the District Court. The Legislature filed opposition papers, arguing that it was immune from liability for fees and that the fee application was both untimely and excessive. The District Court heard oral argument, and rejected the Legislature's arguments with respect to both immunity and untimeliness. The District Court found that the plaintiffs were prevailing parties under S 1983, filed an opinion and order rejecting the Legislature's objections, and granted the plaintiffs the requested $522,992.84 in attorneys' fees for the District Court trial, the appeal to this Court, and work performed on the fee application. The Legislature filed a timely Notice of Appeal,

challenging the District Court's order extending the time for the plaintiffs to file their fee application; its determination that the New Jersey Legislature was not immune for liability for fees and costs; and the award of fees. We have jurisdiction over the appeal pursuant to 28 U.S.C.S 1291.

II. Timeliness of the Fee Applications

The threshold issue, which is purely a question of law, is whether the plaintiffs' initial request for an extension of

time on their fee application was timely. A decision to grant an extension of time pursuant to Fed. R. Civ. P. 6(b) is reviewed for abuse of discretion. Dominic v. Hess Oil V.I. Corp., 841 F.2d 513, 516 (3d Cir. 1988). The legal interpretation of a procedural rule is reviewed de novo. Elcock v. Kmart Corp., 233 F.3d 734, 745 (3d Cir. 2000).

Fed. R. Civ. P. 54(d), which governs the awarding of attorneys' fees, states:

> Unless otherwise provided by statute or an order of the court, the motion must be filed and served no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought.

(emphasis added). The plaintiffs filed their request for an extension of time on December 24, 1998, more than 14 days after the judgment was entered on December 8, 1998. The District Court held that the motion was not time-barred, and granted the extension, relying on District of New Jersey Local Rule 54.2(a), which provides:

> In all actions in which a counsel fee is allowed . .. , an attorney seeking compensation for services or reimbursement of necessary expenses shall file with the Court an affidavit within 30 days of the entry of judgment or order, unless extended by the Court . . . .

The Federal Rule, on its face, applies "[u]nless otherwise provided by . . . [an] order of the court." Fed. R. Civ. P. 54(d).

6

According to the District Court, Local Rule 54.2(a) constituted an "order of the court" and thereby extended the time under Rule 54(d)(2)(B).1 The Legislature disagrees, arguing that the local rule is not an "order of the court." In its submission, District of New Jersey Local Rule 54.2(a) conflicts with Fed. R. Civ. P. 54(d)(2)(B), and because a local rule may not conflict with an applicable federal rule, see 28 U.S.C. S 2071(a) and Fed. R. Civ. P. 83(a)(1), the New Jersey local rule is invalid. See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 173 (3d Cir. 1990) ("District courts are authorized to prescribe rules for the conduct of court business so long as those rules are consistent with the Acts of Congress and the Federal Rules of Procedure.").

The Legislature further contends that, because the motion for an extension of time was not timely under Fed. R. Civ. P. 54(d)(2)(B), the District Court abused its discretion in granting an extension by signing the order on the same day it received the plaintiffs' request without providing the Legislature with an opportunity to be heard pursuant to Fed. R. Civ. P. 6(b)(2) before it acted on the

motion. The plaintiffs respond that because the District of New Jersey Local Rule 54.2(a) is an "order of the court," it qualifies as an exception to the limitations period in Fed. R. Civ. P. 54(d)(2)(B). Thus, the plaintiffs submit that the District Court acted within its discretion in granting the extension of the time to file without notice or motion, as is allowed under Fed. R. Civ. P. 6(b)(1).

Every Court of Appeals to have addressed the issue has decided that a local rule extending the time to file a motion for fees is a "standing order," and, therefore, not inconsistent with the federal rules. See Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253 F.3d 1332, 1335 (11th Cir. 2001); Walker v. City of Bogalusa, 168 F.3d 237, 239 (5th Cir. 1999); Eastwood v. Nat'l Enquirer, 123 F.3d 1249,

_____

1. We note in this regard that the rule in question was part of the corpus of the Local Civil and Criminal rules that were the subject of renumbering "to correspond to their counterparts in the Federal Rules of Civil and Criminal Procedure," which were adopted by the District Court in an Order dated April 1, 1997.

7

1257 (9th Cir. 1997); Johnson v. Lafayette Fire Fighters Ass'n, 51 F.3d 726, 729 (7th Cir. 1995). The rationale of the Fifth, Seventh, Ninth, and Eleventh Circuits is best described in Johnson, which was the first case to decide the issue and the case most cited by the other circuits in support of their position:

> [A] local rule is an order of the court, at least for purposes of Fed. R. Civ. P. 54(d)(2)(B). Local rules are adopted by the majority of the judges in a district to govern the practice and procedure of litigation in that district. As such, local rules are, in effect, "standing orders," such that [they] should be viewed as an order of the court . . . . And while these standing orders generally cannot conflict with the Federal Rules of Civil Procedure, the Supreme Court and Congress have frequently used the federal rules to adopt default rules of procedure that are modifiable by the districts through the adoption of local rules. See, e.g. , Fed. R. Civ. P. 26(a)(1). We believe that the 14-day filing period contained in Fed. R. Civ. P. 54(d)(2)(B) is one such default rule and that the districts are free to modify the filing period through local rules.
>
> That our reading of Fed. R. Civ. P. 54(d)(2)(B) is the most logical reading of the rule, is made apparent after considering the prior law. Before the enactment of the 1993 Amendments, districts were free to adopt local rules to govern the filing of fee petitions. See White v. New Hampshire Dep't of Employment Security, 455 U.S. 445 (1982). After White, many districts adopted local rules to govern the filing of fee petitions. . . . If the Supreme Court and Congress wanted to preempt these local rules they would have done so in definite terms

that would not place practitioners in the difficult
position of guessing what time period governed the
filing of fee petitions. But Fed. R. Civ. P. 54(d)(2)(B)
does not contain clear language stripping districts of
their power to promulgate local rules to govern the
filing of fee petitions. Rather, the rule contains the
ambiguous phrase "order of the court," which we do
not believe evidences the intent of the Supreme Court
and of Congress to so fundamentally change the law in
this area.

8

Johnson, 51 F.3d at 729.

The District Court followed the Seventh Circuit's
reasoning when it concluded that there was no
inconsistency in this case:

> [P]laintiffs' motion to extend time to file their fee
> application was timely because [the local rule is] an
> "order of the court" which extend[s] the 14-day limit
> contained in Fed. R. Civ. P. 54(d)(2)(B). The Paoli case
> [In re Paoli R.R. Yard PCB Litig., 221 F.3d 449 (3d Cir.
> 2000)] applies to instances where a Local Rule is
> inconsistent with a Federal Rule. Fed. R. Civ. P.
> 54(d)(2)(B) provides that the Federal Rule may be
> amended by an order of the court and therefore, there
> is no inconsistency in this case.

We agree, and conclude that District of New Jersey Local
Rule 54.2(a) is an order of the court for the purposes of
Fed. R. Civ. P. 54(d)(2)(B). Thus, we are satisfied that the
plaintiffs had 30 days within which to file their application
for attorneys' fees (or, in this case, a motion to extend
time). This construction seems highly appropriate in view of
the nature of the proceeding. Consideration of fee petitions
is often an extremely involved and time-consuming exercise
that can be burdensome to a busy district court, and
district courts ought to have the flexibility to control their
own calendars with respect to such matters.

Reviewing the District Court's decision to grant an
extension of time pursuant to Fed. R. Civ. P. 6(b) for abuse
of discretion, Dominic v. Hess Oil V.I. Corp. , 841 F.2d 513,
516 (3d Cir. 1988), we are satisfied that the District Court
did not abuse its discretion, pursuant to Fed. R. Civ. P.
6(b)(1), to grant the extension of time without motion or
notice since the request for the extension was timely
pursuant to Local Rule 54.2(a).2

---

2. The Legislature also raises an argument with respect to the timeliness
of the fee application for appellate work. The plaintiffs asked us to
remand for consideration of appellate fees to the District Court or,
alternatively, to extend the time for the plaintiffs to apply for fees. The
Clerk referred the motion to the merits panel, granting the plaintiffs "an
extension of time to file the petition for fees and costs until October 6,

III. Legislative Immunity

The Legislature is typically immune from liability under
42 U.S.C. S 1983 and thus cannot generally be held liable
for fees under 42 U.S.C. S 1988. Supreme Ct. of Va. v.
Consumers Union, 446 U.S. 719, 732-34 (1980). While
legislative immunity protects the Legislature in its
legislative capacity -- i.e., for promulgating the Act at issue
in this case -- we conclude that the Legislature is not
entitled to immunity in this case because defending the Act
was an act outside of its legislative capacity.

In May v. Cooperman, 578 F. Supp. 1308 (D.N.J. 1984),
aff 'd, 780 F.2d 240 (3d Cir. 1985), the District Court for
the District of New Jersey was faced with precisely the
issue that we must address. The New Jersey Legislature
enacted a "moment of silence" statute that overrode the
Governor's veto. When May brought suit, the Attorney
General of New Jersey stated that he would neither defend
the constitutionality of the statute nor discipline teachers

_____

2000 or until the panel issues an order deciding the motion, whichever
occurs earlier." The merits panel subsequently addressed the motion,
relegating "consideration in the first instance of appellate attorneys' fees
and costs to the District Court." The application for attorneys' fees for
appellate work was filed on November 20, 2000, along with the
application for District Court fees.

The Legislature argues that once the panel decided to remand to the
District Court, the plaintiffs had 30 days from that decision, rendered on
October 6, to file their fee application pursuant to L.A.R. Misc. 108.1(a).
We disagree, and are satisfied that the District Court was correct in
concluding that the application was timely filed. The motion filed by the
plaintiffs, seeking an extension or remand of the application for appellate
fees, requested that we remand to the District Court so that the issue of
fees and costs for appellate work could be "considered with -- and on
the same schedule as -- the issue of fees and costs for trial work." Since
the motion requested the remand, on the same schedule as the issue of
fees for trial work, which we granted, the logical interpretation of the
order granting the remand is that it granted the motion to file a single
fee request all on one schedule. Such an order is undoubtedly within our
power. Thus, the District Court did not abuse its discretion in holding
that the November 20, 2000 application was timely filed with respect to
appellate fees.

who refused to implement it. The Legislature intervened to
defend the statute and "took an active role in defense of the
statute, beginning the day the complaint was filed." 578 F.
Supp. at 1310. The district court subsequently awarded
fees against the Legislature after determining that the
statute was unconstitutional, concluding that it was not
entitled to immunity.

Conceding that the Legislature was immune for promulgating the statute, see Consumers Union v. Virginia State Bar, 688 F.2d 218 (4th Cir. 1982), the court reasoned that the "Legislature sought to perform a task which normally falls to the executive branch, but which, in this case, the executive branch refused to perform." 578 F. Supp. at 1316. In this sense, the intervening legislators "abandoned their legislative role and took on a quasi-enforcement role by intervening to defend the statute. [Thus, t]heir legislative immunity should not protect them when they step outside the function for which their immunity was designed." Id. at 1317.

The May court also noted that this result made practical sense:

> [T]he State defendants refused to defend the lawsuit because of a good faith belief that the statute was unconstitutional; the Legislature chose to intervene and litigate vigorously because of a strong interest it took in the statute. The result was that plaintiffs were put to extensive and costly litigation, but are unable to recover fees from the party from whom they would normally recover fees under S 1988. Were they also unable to recover from the defendant-intervenors, I believe the intent of the fee statute would be thwarted.

> If the Legislature were deemed immune, a major loophole would be created in the statutory scheme for reimbursing plaintiffs. Original defendants, otherwise liable for fees, could remain passive in S 1983 actions, leaving defense of the challenged laws to Legislatures or others claiming to possess immunity from fee liability. States, by this method, could defend constitutional challenges to their statutes without having to pay plaintiffs' fees awards, which Congress

11

> has acknowledged to be "an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies" which the civil rights laws contain. S. Rep. No. 94-1011, 94th Cong., 2d Sess. 2, reprinted in 1976 U.S. Code Cong. & Ad. News, 5908, 5909-10.

Id. at 1317-1318.

Although this issue was not reached on appeal when this Court affirmed May, see May v. Cooperman , 780 F.2d 240 (3d Cir. 1985), we have subsequently indicated that this rationale is persuasive. In Daggett v. Kimmelman , 617 F. Supp. 1269 (D.N.J. 1985), the District Court for the District of New Jersey followed the reasoning of May in awarding attorneys fees against the New Jersey Legislature:

> [T]his court is . . . in accord with the analysis set forth in May v. Cooperman. The New Jersey Legislature was absolutely immune from an award of an attorney's fee

for enacting the Feldman Plan, but once the Legislature intervened to defend the statute, even if it did so because the executive branch refused to defend the statute, the Legislature took on a quasi-enforcement role, and gave up its immunity.

Daggett, 617 F. Supp. at 1279. On appeal to this Court, the Legislature raised the issue of immunity, and we affirmed the district court's holding because the district court "considered thoroughly" the contention and we agreed with the District Court that the "contentions lack merit." Daggett v. Kimmelman, 811 F.2d 793, 795 n.2 (3d Cir. 1987).

The Legislature argues that these cases were poorly reasoned and are not valid precedent in light of Independent Federation of Flight Attendants v. Zipes , 491 U.S. 754 (1989). Daggett, as a published opinion of this Court, is binding upon us unless its validity was undermined by Zipes, as is now argued. In Zipes, the Supreme Court held that the Independent Federation of Flight Attendants ("IFFA"), as intervenor, was not liable for attorneys' fees. Noting that "district courts should . . . award . . . attorney's fees against losing intervenors only where the intervenors' action was frivolous, unreasonable, or without foundation," the Court concluded that it would

12

not impose liability on the IFFA because its "cases have emphasized the crucial connection between liability for violation of federal law and liability for attorney's fees under federal fee-shifting statutes." Id. at 761-62. The Court concluded that the IFFA-intervenors were "blameless" because they had not violated anyone's civil rights. Moreover, the IFFA became "a party to the lawsuit not because it bore any responsibility for the practice alleged to have violated [federal law], but because it sought to protect the bargained-for seniority rights of its employees." Id. The "central fact" for the Court was thus "that[IFFA] litigated (and lost) not to avoid liability for violation of the law but to prevent TWA's bargaining away of its members seniority rights in order to settle with respondents." Id. at 765-66.

The Legislature argues that Zipes is controlling to the extent that it makes clear that the Legislature's vigorous defense of the Act does not make it liable for fees unless its position was frivolous, unreasonable, or without foundation because the "crucial connection between liability for violation of federal law and liability for attorney's fees under federal fee-shifting statutes" is missing in this case. Id. at 762. The Legislature ignores a crucial distinction between Zipes and this case. As we noted in Daggett , Zipes focused on intervenors who entered the suit to protect the interests of a third-party and a suit in which there was another defendant who would be liable for the fees. As the District Court in Daggett observed:

I have serious doubts about the applicability of Zipes . . . . . In Zipes, the Supreme Court reasoned that the

intervenors were completely "blameless," having had no part in the constitutional violation of which plaintiffs complained, and intervened only to protect their own rights which were affected by a proposed settlement agreement between plaintiffs and defendants. Moreover, the Court reasoned that there were present in the action "guilty" defendants, who would be liable, in any event, for the counsel fees and costs incurred by plaintiffs. I question the defendants-intervenors' qualifications as "blameless" intervenors, in light of the vigorous battle fought defending an unconstitutional statute, and, in addition, cannot ignore the absence in

13

this case of a "guilty" defendant who otherwise would be liable for these fees.

Daggett v. Kimmelman, 1989 WL 120742, at *7 n.6 (D.N.J. July 18, 1989) (emphases added) (citations omitted).

Similarly, in Mallory v. Harkness, 923 F. Supp. 1546 (S.D. Fla. 1996) aff 'd, 109 F.3d 771 (11th Cir. 1997), the district court awarded fees against the intervenor-Attorney General and distinguished Zipes as follows:

The Zipes Court concluded that making blameless intervenors liable for attorney's fees simply did not further the purposes behind the fee shifting statutes. Thus, Zipes appears to establish the following rule: where a losing intervenor is "innocent," attorney's fees will not be awarded against that intervenor unless the intervention was frivolous, unreasonable, or without foundation.

The intervenor in Zipes, however, substantially differs from the AG in the case at hand. In Zipes, the intervenor entered the case late in the litigation to defend the rights of a third-party to the litigation . In contrast, the AG entered the case early in the proceedings and vigorously defended the constitutionality of the statute throughout the entire proceeding. It appears to the Court that the AG took all steps ordinarily taken by a defendant and, in fact, acted as the defendant in the case. Given these facts, characterizing the AG as an "innocent" or"blameless" intervenor would be inaccurate. The AG in the present case clearly played a pivotal role.

The AG defended the unconstitutional statute voluntarily and in doing so attempted to aid in the offending statute's enforcement.

923 F. Supp. at 1553 (emphasis added).

We are persuaded by the reasoning of these courts. While legislatures enjoy immunity for promulgating statutes, it makes little sense to provide them with this immunity when they step out of that role. However, when a legislature feels

it necessary to perform what is generally regarded as an executive function because the state executive branch

14

officials named as defendants in their official capacities refuse to perform that function,3 the legislature is the functional equivalent of a defendant in the case-- without it, there would be no case. This is very different than the situation contemplated in Zipes, where the intervenor sought to protect the interests of a third-party; regardless of the intervenor, there was an underlying ongoing dispute between the plaintiff and the defendant. To read Zipes as contemplating situations like the one before us, and the ones at issue in May, Daggett, and Mallory, would be an over-extension of Zipes and would thwart the purpose of the fee-shifting statutes. Moreover, we find the Legislature's reliance on Thorstenn v. Barnard, 883 F.2d 217 (3d Cir. 1989), to be misplaced, as we explain in the margin. 4 Thus,

---

3. In the federal system, the Attorney General defends the constitutionality of an act of Congress whenever a reasonable argument can be made in defense of the act. See "The Attorney General's Duty to Defend the Constitutionality of Statutes," 5 U.S. Op. Off. Legal Counsel 25, 1981 WL 30934. If the Attorney General is unable to defend an act of Congress, the Senate Legal Counsel is notified and may undertake the representation. See 2 U.S.C. S 288k.

If New Jersey had followed a similar regime and the defense of the statute at issue had been performed by the state attorney general, the state would not be immune from fees. However, New Jersey is not required to follow the federal scheme. It is not obligated to maintain a separation of powers mirroring that of the federal government. It is free to assign what are generally regarded as executive functions to the legislature, and that, in effect, is what has occurred in this case and the other cases noted above in which the Legislature undertook the task of defending the constitutionality of a state law. But New Jersey cannot escape an obligation under federal law to pay attorneys' fees by assigning this function to the Legislature.

4. The Legislature relies on Thorstenn v. Barnard, 883 F.2d 217 (3d Cir. 1989), in support of its position that Zipes is controlling. In that case, the plaintiffs sued the Chairman of the Committee of Bar Examiners of the Virgin Islands in a challenge to the residency requirement. The Bar Association intervened. Plaintiffs ultimately won and the Bar Association disputed its liability for the fee award. This Court concluded that the Association, as a blameless intervenor, was not liable since it had imposed no additional burden on the defendant. The case before us is different in that the presence of the Chairman as a defendant in Thorstenn meant both that there was someone liable for the fees

15

we conclude that the Legislature is not entitled to immunity in this situation, where it has stepped out of the role for which immunity is provided.

IV. District Court's Award of Fees

The Legislature raises several arguments with respect to
the award of attorneys' fees: (1) whether the Court
adequately explained the basis for its decision; (2) whether
the District Court erred in failing to hold an evidentiary
hearing on the "reasonable hourly rate"; and (3) whether
the Court abused its discretion in determining what hours
were eligible for compensation. We review de novo the
standards and procedures applied by the District Court in
determining attorneys' fees, as it is a purely legal question.
Smith v. Philadelphia Housing Auth., 107 F.3d 223, 225 (3d
Cir. 1997). We review the findings of fact for clear error.
Washington v. Philadelphia County Ct. of Common Pleas, 89
F.3d 1031, 1035 (3d Cir. 1996). The reasonableness of a fee
award itself is reviewed for abuse of discretion, Loughner v.
Univ. of Pittsburgh, 260 F.3d 173, 177 (3d Cir. 2001), but
a court abuses its discretion when its ruling is founded on
an error of law or a misapplication of law to the facts, Doe
v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 154 (3d Cir.
1999). For the reasons set forth in the margin, we agree
with the Legislature's claim that the District Court erred in
determining the reasonable hourly rate, and we therefore
vacate and remand for an evidentiary hearing.5 We turn to
the remaining issues.

_____

notwithstanding the fact that the Bar Association was not, and that the
claims raised by the Bar Association were duplicative of a present
defendant. In this case, there would have been no litigation without the
Legislature's intervention and so the rationale of Thorstenn -- that the
intervenor "imposed no additional burden on plaintiffs in the litigation"--
is not applicable. 883 F.2d at 219-220.

5. A prevailing party in a S 1983 action is entitled to reasonable
attorneys' fees and costs under 42 U.S.C. S 1988. A reasonable fee is one
"adequate to attract competent counsel, but which does not produce
windfalls to attorneys." PIRG v. Windall, 51 F.3d 1179, 1185 (3d Cir.
1995) (citation omitted). A reasonable hourly rate multiplied by a

16

A. Hours Expended

The Legislature contends that the District Court abused
its discretion by awarding fees for some of the hours that
the plaintiffs requested. For work to be included in the
calculation of reasonable attorneys' fees, the work must be
" 'useful and of a type ordinarily necessary' to secure the
final result obtained from the litigation." Pennsylvania v.
Del. Valley Citizens' Council, 478 U.S. 546, 561 (1986).

1. Award of Fees to be Vacated and Remanded

A district court "must explain on the record the reasons
for its decisions." Rode v. Dellarciprete, 892 F.2d 1177,
1187 (3d Cir. 1990); see also Pa. Envtl. Def. Found. v.
Canon-McMillan Sch. Dist., 152 F.3d 228, 232 (3d Cir. 1998)
("[T]he district court must provide a concise but clear

explanation of its reasons for [a] fee award.") (internal quotation marks and citation omitted). "[I]f the district court's fee-award opinion is so terse, vague, or conclusory that we have no basis to review it, we must vacate the fee-award order and remand for further proceedings." Gunter v.

_____

reasonable number of hours expended -- the "lodestar" -- is the presumptively reasonable fee. Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 177 (3d Cir. 2001); Hensley v. Eckerhart , 461 U.S. 424 (1983). A reasonable rate is the prevailing market rate in the relevant community. Loughner, 260 F.3d at 180. The Legislature contends that the District Court failed to conduct an evidentiary hearing on the "reasonable hourly rate" component of the lodestar and that this constitutes reversible error. See Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 131-32 (3d Cir. 2000) (relying on generalized sense of what is customary and proper in calculating hourly rates rather than evidence was reversible error). We have held that if "hourly rates are disputed, the district court must conduct a hearing to determine the reasonable market rates." Smith v. Philadelphia Housing Auth., 107 F.3d 223, 225 (3d Cir. 1997); see also Lanni v. State of N.J., 259 F.3d 146, 149 (3d Cir. 2001). The District Court did not hold an evidentiary hearing, notwithstanding the fact that such rates were disputed by the six affidavits filed by the Legislature. Thus, the District Court committed reversible error, and we vacate the award to that extent and remand to the District Court for an evidentiary hearing on the reasonableness of the hourly rates sought by the plaintiffs.

17

Ridgewood Energy Corp., 223 F.3d 190, 196 (3d Cir. 2000). In addition, as noted above, see supra note 5, if "hourly rates are disputed, the district court must conduct a hearing to determine the reasonable market rates." Smith v. Philadelphia Housing Auth., 107 F.3d 223, 225 (3d Cir. 1997); see also Lanni v. State of N.J., 259 F.3d 149, 149 (3d Cir. 2001). Because we conclude that the District Court's fee award with respect to the following challenged requests are "vague" and "conclusory" -- thereby hindering our ability to review them -- or because the hourly rate for the work was challenged and no evidentiary hearing was held, we will vacate the following fee awards and remand for further proceedings. Id.

a. Delegable Tasks

The Legislature challenges 18.25 billed hours for tasks that, it argues, could have easily been delegated to non-professionals such as paralegals, secretaries, and couriers, including such tasks as document review, exhibit preparation, and reviewing citations. In Halderman v. Pennhurst State School & Hosp., we stated:

> We have cautioned on a number of occasions that when a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable. We cannot condone "the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals."

49 F.3d 939, 942 (3d Cir. 1995) (citation omitted). The District Court concluded that it was not "convinced the work should have been delegated to a non-professional."

While the plaintiffs submit that the District Court did not abuse its discretion in concluding that these hours were not easily delegable, we are unable to make a determination based on the opinion of the District Court. The plaintiffs point out that "it would be unreasonable to expect attorneys to delegate every ministerial duty they perform because 'the time spent delegating the task could well exceed the time spent by the attorney' performing the task herself," and that, "each of these tasks did not take up much of the attorneys' time." Marisol A. v. Giuliani, 111 F.

18

Supp. 2d 381, 395 (S.D.N.Y. 2000). However, we do not know from the District Court opinion what tasks were at issue here, and who performed these tasks -- either senior or junior level attorneys. Moreover, there is an issue of the appropriate hourly rate for the performance of such tasks, which will require an evidentiary hearing. See supra note 5. We therefore vacate and remand the award of fees for delegable tasks pursuant to Gunter, supra.

b. Travel Time

Out-of-pocket expenses are included in the concept of "attorneys' fees" as "incidental and necessary expenses incurred in furnishing effective and competent representation," and thus are authorized by S 1988. See Remarks of Congressman Drinan, 122 Cong. Rec. H12160 (daily ed. 1 Oct. 1976). The authority granted inS 1988 to award a "reasonable attorneys' fee" includes the authority to award "reasonable out-of-pocket expenses . . . normally charged to a fee-paying client, in the course of providing legal services." Associated Builders & Contractors of La., Inc. v. The Orleans Parish Sch. Bd., 919 F.2d 374, 380 (5th Cir. 1990). The Supreme Court held in Missouri v. Jenkins, 491 U.S. 274 (1989), addressing the "more difficult question [of] how [additional out-of-pocket expenses are] to be valuated in calculating the overall attorney's fee," id. at 285, that "the prevailing practice in a given community" is to govern whether such out-of-pocket expenses are billed separately, and whether they are billed at cost or at market rates. Id. at 288.

Heeding the admonition in Jenkins, we have observed that travel time is an out-of-pocket expense underS 1988 that is generally recoverable "when it is the custom of attorneys in the local community to bill their clients separately for [it]." Abrams v. Lightolier Inc., 50 F.3d 1204, 1225 (3d Cir. 1995) (looking to S 1988 cases to determine whether to award out-of-pocket expenses in a case under the New Jersey Law Against Discrimination). Implicitly rejecting the contention of the defendants that travel time is not compensable, the District Court awarded it, but there

is no indication that the District Court reviewed any evidence that this was the custom in New Jersey-- the

relevant, local community -- as it should have. However, the District Court's ultimate conclusion was not in error, as travel time is apparently compensable in New Jersey. See, e.g., Abrams, 50 F.3d at 1225 (predicting that the New Jersey Supreme Court would hold that travel time and expenses are recoverable as party of an attorneys' fee award); H.I.P. v. Hovnania, 676 A.2d 1166, 1176 (N.J.L. Div. 1996) (awarding fees for travel time).

The Legislature also challenges the rate at which such travel time should be compensated. Again, this issue is guided by Jenkins and the holding that a court must look to the practice in the local community. In this case, the District Court awarded fees for travel time billed at the maximum rate, yet there is no indication that this is the practice in New Jersey. The Legislature contends that the hourly rate for travel time should be no more than $100. See ARC v. Voorhees, 986 F. Supp. 261, 271-72 (D.N.J. 1997); H.I.P., 676 A.2d at 1176. We note, however, that in the cases cited by the Legislature, the parties requested $100 compensation for travel time and were awarded that amount. This case presents a situation in which the hourly rate for travel time is disputed. Therefore, the best course of action is to remand for a determination of the appropriate rate pursuant to Smith v. Philadelphia Housing Auth., 107 F.3d 223, 225 (3d Cir. 1997) (concluding that if there is a dispute as to hourly rates, the district court must conduct a hearing to determine the reasonable market rate) and Jenkins, 491 U.S. at 287-88 (concluding that "the prevailing practice in a given community" is to govern whether such out-of-pocket expenses are billed separately, and whether they are billed at cost or at market rates). Thus, while we agree that reasonable travel time may be compensated, we vacate that aspect of the award, and remand for an evidentiary hearing to determine the appropriate hourly rate at which the plaintiffs should be compensated.

c. Time Litigating the Fee Application.

A party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application. See Prandini v. Nat'l Tea Co. , 585 F.2d. 47,

53 (3d Cir. 1978). However, as the Supreme Court observed in Hensley v. Eckerhart, 461 U.S. 424 (1982), a "request for attorney's fees should not result in a second major litigation." 461 U.S. at 437. The Legislature argues that the amount of time devoted to the fee litigation and compensated for by the District Court was excessive. In addition, the Legislature challenges the District Court's

conclusion that the hours billed to prepare the fee application should be compensated at the same hourly rate as the work performed on the merits of the case because the application "involve[d] several complex issues and extensive research."

Although the Legislature argued that the hours were excessive, nowhere does the District Court address this contention. In addition, there seems to be a conflict between the Legislature and the plaintiffs as to how many hours were actually claimed for compensation. The Legislature contends that 61.7 hours were expended on the initial fee papers and that 64.5 hours were spent on the fee litigation that arose out of the initial request for fees. As we read the record, the plaintiffs requested 29.3 hours on the initial petition and 64.5 hours for litigating the fee petition. However, it is not clear from the District Court's opinion precisely for how many hours the plaintiffs were compensated in the award for time spent on the fee application. Because the District Court performed scant analysis, if any, of the hours, there are no findings on the reasonableness of the plaintiffs' claim. Thus, we"have no basis for determining the reasonableness or accuracy" of the District Court's award. Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 179 (3d Cir. 2001).

In addition, with respect to the Legislature's contention as to the appropriate hourly rate for work on the fee petition, all that was said by the District Court is that the hours will be compensated at the same hourly rate as the work performed on the merits. Yet, as we have previously stated, a district court must hold an evidentiary hearing when rates are disputed. Smith v. Philadelphia Housing Auth., 107 F.3d 223, 225 (3d Cir. 1997).

We will vacate the award of fees for work performed on the fee petition and remand for further proceedings

21

pursuant to Gunter, supra, and we also remand for an evidentiary hearing to determine the hourly rate pursuant to Smith, 107 F.3d at 225.

d. Oral Argument Preparation

The Legislature argues that the District Court abused its discretion in awarding 121 hours for preparation for the oral argument for the merits appeal. Included in these hours are 25.5 hours of moot court time and 4.5 hours of observing oral argument before this Court. The District Court held that it could not "conclusively find that [those hours] were unreasonable and unnecessary. Furthermore, the Court does not find the additional hours billed by plaintiffs preparation of the appeal to be excessive as plaintiffs were required to respond to thirteen (13) issues listed by the Legislative Defendants for appeal."

In Maldonado v. Houstoun, 256 F.3d 181 (3d Cir. 2001),

we stated:

> A reasonable fee for hours spent preparing for a legal argument should be limited to hours reasonably necessary for a lawyer to become familiarized with the facts and the law pertaining to the issue to be argued, an analysis of the opponent's argument, and questions anticipated to be posed by the court. Under the fee shifting statute, the losing party is expected to pay for hours reasonably spent in the argument and its preparation, but not for excessive hours, or hours spent in learning or excessively rehearsing appellate advocacy.

256 F.3d at 187 (emphasis added). Under Maldonado, time spent rehearsing oral advocacy, i.e., "moot court," may be compensated as long as the time requested is not "excessive." The District Court made no mention of Maldonado, deciding instead that it could find no reason why these hours were "unreasonable" or "unnecessary." Yet 25.5 hours of moot court time seems excessive within the meaning of Maldonado. Even assuming that an oral argument is 30 minutes per side, 25.5 hours would enable a lawyer to practice his argument over 50 times. We assume that litigators have a baseline competency in oral

22

advocacy that does not require such extensive rehearsal at the possible expense of an opposing litigant. We will therefore vacate this award of fees, remanding to the District Court for a determination of the reasonable number of hours for which the plaintiffs may be compensated.

In addition, while Maldonado permits compensation for preparing for oral argument, we will not permit compensation for observation of the Court to which argument will be made. While such observation may be generally instructive, it is the kind of thing that should be part of a lawyer's general experience, not charged to a specific case. Therefore we will vacate the District Court's award of such fees.

As for the remaining 61 hours, to which there is only a generalized exception, the District Court noted that the plaintiffs were "required to respond to thirteen (13) issues listed by the Legislative Defendants for appeal." While the plaintiffs are certainly entitled to compensation for hours that are not "excessive" under Maldonado , given the generic nature of both the challenge to such fees and the determination that they are reasonable, we "have no basis for determining the reasonableness or accuracy" of the District Court's award although we are here faced with a challenge to it. Loughner v. Univ. of Pittsburgh , 260 F.3d 173, 179 (3d Cir. 2001). We will therefore vacate the award of fees for the remaining 61 hours spent preparing for oral argument and remand for further proceedings.

e. Researching and Writing Briefs

The District Court approved 365 hours for briefing in the District Court and 564 hours for briefing the merits appeal. The District Court found "the hours [sought] regarding preparation of briefs to be reasonable given the complex and unprecedented nature of this action." In addition, the District Court noted that "counsel for the Legislative Defendants billed substantially more hours than[those for which] plaintiffs seek reimbursement." Indeed, the Legislature billed 902 hours for the merits appeal. According to the District Court, this supported its determination that the plaintiffs' request for compensation was reasonable, especially given the nature of the case.

23

On appeal, the Legislature's argument consists of nothing more than the following retort to the District Court's conclusion:

> All plaintiffs had to do -- and all they did -- was rely on existing abortion jurisprudence and insist that partial-birth abortions are no different from other abortions. Nothing 'complex' or 'unprecedented' was involved. The Legislature did the heavy lifting, so it is no surprise that its attorneys billed more time.

While we disagree with the Legislature's contention that this was "all" that the plaintiffs had to do, we do think that the amount of hours spent briefing is excessive. However, the District Court's opinion offers no basis for review. See Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 179 (3d Cir. 2001). Pursuant to Gunter, supra, we will vacate the award of fees for time spent on briefing this case, both in the District Court and in this Court, and remand for further proceedings.

2. Award of Fees to be Affirmed

The fee awards to be discussed in this segment of the opinion are supported by "a concise but clear explanation" of the District Court's reasons for the fee award. See Pa. Environ. Def. Foundation v. Canon-McMillan School Dist., 152 F.3d 228, 232 (3d Cir. 1998). Moreover, we agree with the District Court that the plaintiffs' work in the areas described infra was " 'useful and of the type ordinarily necessary' to secure the final result obtained from the litigation." Pennsylvania v. Del. Valley Citizens' Council, 478 U.S. 546, 561 (1986) (citation omitted). In addition to the arguments we will discuss, the Legislature also makes an argument that the District Court erred in holding that the description of the work done during 391.75 hours out of the total number of hours billed were specific enough for an award of fees. We explain our disagreement with the Legislature on this point in the margin.6

_____

6. A fee petition must be specific enough for a court "to determine if the hours claimed are unreasonable for the work performed." Washington v.

Philadelphia County Ct. of Common Pleas, 89 F.3d 1031, 1037 (3d Cir.

24

a. The Expert Who Did Not Testify

The Legislature argues that 120 hours of work performed by an expert, Dr. Carolyn Westhoff, was not useful and no fees should be awarded for time spent preparing her for testimony when she was, in fact, never called to testify. The District Court concluded that the time spent on Dr. Westhoff was "compensable as it was both successful and useful to the Court in formulating its findings of fact." See Planned Parenthood v. Verniero, 41 F. Supp. 2d 478, 483 n.1 (D.N.J. 1998) (district court merits decision relying on declaration of Westhoff). The plaintiffs spent approximately 120 hours on work relating to Westhoff 's anticipated trial testimony, but she never testified, as the District Court observed, because "when time ran over [she] could not be rescheduled as a result of scheduling conflicts." Instead, Dr. Westhoff 's declaration was admitted into evidence in redacted form and then relied upon in the findings of fact.

The plaintiffs not only prepared Dr. Westhoff for a two-phase deposition taken by the Legislature, but also successfully opposed the Legislature's motion to exclude her testimony, and prepared her for direct and cross-examination. As noted above, the day her examination was scheduled, testimony ran over and because of the schedules of the court, the Legislature's witness, and Dr.

---

1996) (internal quotation marks and citation omitted). As we have observed:

> [A] fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." However, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."

Id. at 1037-38 (quoting Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir. 1990)). We have reviewed the time entries that the Legislature complains about and agree with the District Court that these entries are sufficiently specific. We therefore affirm the District Court's award of fees for those hours.

25

Westhoff, rescheduling was difficult and a stipulation was negotiated whereby twenty-seven of the thirty-six paragraphs in her declaration were admitted instead of live testimony.

The plaintiffs' preparation was necessary since they could

not have known that Dr. Westhoff was not going to testify and could not have announced their intention to admit the declaration without the Legislature's having the opportunity to depose her and agree not to cross-examine her. Moreover, her work product was used in the trial. In light of the aforementioned, the District Court did not abuse its discretion in concluding that the attorneys did not waste time on the work they did with respect to Dr. Westhoff, and that such work was compensable within the meaning of Delaware Valley, supra, and we therefore affirm the award of these fees.

b. The Unsuccessful Summary Judgment Motion

Included in the fee award are 123.8 hours spent preparing a summary judgment motion that was never accepted for filing and was never considered on the merits. The District Court concluded that this time was compensable since the plaintiffs "relied" on their summary judgment brief, upon order of the District Court, instead of filing a post-trial brief, which made the work on the motion "necessary," "successful," and "useful." We conclude that the District Court did not abuse its discretion in determining that these hours were compensable and that its explanation was clear, concise, and, therefore, sufficient. Since the summary judgment brief was eventually submitted in lieu of a pre-trial brief, and a post-trial brief, the work was certainly "necessary" and "useful," and we therefore affirm the award of fees.

c. "Learning Curve" Time

The District Court permitted recovery of fees for 19.5 hours spent by newly-assigned attorneys getting "up-to-speed" on the plaintiffs' case. As the District Court stated, "While the Court agrees that the losing party should not be expected to pay for the time a prevailing party spends

coming up to speed on an area of law it is unfamiliar with, the time a party spends reviewing the facts and underlying documents of a case is compensable." We agree. The Legislature cites authority for the proposition that hours billed as a result of "re-staffing" the case at will cannot be recovered, see, e.g., Marisol A. v. Giuliani, 111 F. Supp. 2d 381, 395-96 (S.D.N.Y. 2000) (decreasing award of fees because of excessive turnover), but that case is distinguishable because there was no excessive re-staffing here.

In short, there is no indication that these attorneys were not "necessary" to securing the outcome in the case. As such, it would be "necessary" for them to spend time getting "up-to-speed" on the case to be of assistance. In addition, 19.5 hours is not much time for two attorneys who are getting up-to-speed on a fairly complex and high-profile case. We find no abuse of discretion, and therefore affirm this aspect of the fee award.

d. Alleged Overstaffing

The Legislature submits that the plaintiffs' case was overstaffed and that the District Court erred in rejecting the Legislature's objection to multiple billings. The District Court concluded that:

> the complexity and specialized medical knowledge necessary for the proper presentation of this case warranted the utilization of multiple attorneys. . . . Plaintiffs' case was efficiently staffed . . . .[C]ounsel were assigned specific tasks . . . . Given that this case was essentially a case of first impression and that the issues involved were complex and very technical, the Court finds plaintiffs' staffing of multiple attorneys to be reasonable and necessary to provide adequate representation for plaintiffs.

The District Court also found that, even when an attorney was not addressing questions to a witness or presenting argument to the court, counsel "provided necessary support for each other."

We have written that, "[i]n many cases, the attendance of additional counsel representing the same interests as the

lawyers actually conducting" the litigation is "wasteful and should not be included in a request for counsel fees from an adversary." Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 943 (3d Cir. 1995). We have thus often disallowed compensation for more than one lawyer performing either trial or office work. See, e.g., Lanni v. State of N.J., 259 F.3d 146 (3d Cir. 2001). However, we conclude that the District Court did not abuse its discretion in rejecting the Legislature's claim of overstaffing. This case presented multiple, complex legal questions and was an issue of first impression, decided prior to the Supreme Court's decision in Stenberg v. Carhart, 530 U.S. 914 (2000), in which the Court struck down the Nebraska partial birth abortion statute similar to the one at issue in this case. Given the nature of the case, even the Legislature found it necessary to use "other partner-level attorneys" and "associates, law clerks and paralegals." Quite simply, the magnitude of the case mandated the help of numerous attorneys for both parties.

Moreover, plaintiffs' declarations establish appropriate staffing by demonstrating that the various attorneys were assigned specific tasks. Even if the attorneys had worked on similar tasks, this would not be per se duplicative. As the First Circuit has noted, "[c]areful preparation often requires collaboration and rehearsal." Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 860 (1st Cir. 1988); see also Delph v. Dr. Pepper Bottling Co., 130 F.3d 349, 358-59 (8th Cir. 1997) (refusing to reduce hours for multiple counsel). Given the nature of the case, and, as noted by the

District Court, "the complexity and specialized medical knowledge necessary for the proper presentation of this case," we cannot say that the District Court clearly erred in concluding that plaintiffs' case was not overstaffed. We therefore affirm the District Court's award of these fees.

V. Conclusion

We conclude that the District of New Jersey Local Rule 52(a) is an "order of the court" for purposes of Fed. R. Civ. P. 54(d), thereby extending the time to file a fee application. Thus, we affirm the District Court's order granting the plaintiffs an extension of time to file their fee application.

28

We also conclude that when a legislature steps out of its traditional role of promulgating statutes and intervenes to defend the constitutionality of an act which the executive branch is unwilling to defend, it becomes the functional equivalent of a defendant and may be liable for attorneys' fees.

We vacate the order and remand to the District Court for an evidentiary hearing on the reasonable hourly rate. With respect to the particular challenges to the fee award in this case, we vacate the order and remand to the District Court for development of the record and further factual findings with respect to the award of fees for: 1) delegable tasks; 2) travel time; 3) time spent on the fee petition; 4) oral argument preparation; and 5) researching and writing briefs. We affirm the District Court's order awarding fees for: 1) work performed by Dr. Westhoff; 2) the unsuccessful summary judgment motion; 3) time spent by new attorneys who were getting "up to speed" on the case; and 4) the so-called "ambiguous" time entries.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

29